### Mary Alice Hanks v. David Hanks.

1 ADVANCEMENT—*presumption as to.*   When a husband purchases property with his own funds and the title thereto is taken in the name of his wife, a legal presumption (not conclusive, however,) attaches that it was intended as an advancement to such wife.

Proceeding for accounting.   Appeal from the Circuit Court of Macon County; the Hon. EDWARD P. VAIL, Judge, presiding.   Heard in this court at the November term, 1903.   Affirmed.   Opinion filed June 28, 1904.

MILLS BROTHERS and J. J. FINN, for appellant.

C. C. LE FORGEE and MARSHALL C. GRIFFIN, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

This is a bill in equity by appellee against appellant, his wife, for an accounting.   The cause was referred to a special master, to report the proofs with his conclusions, and such special master made his report, finding that the defendant was not indebted to complainant and that nothing was due

from complainant to defendant and that the bill should be dismissed for want of equity. Complainant filed his exceptions to the report of the master, which exceptions were sustained by the court and a decree entered stating an account and finding that defendant was indebted to complainant in the sum of $2,395. The decree requires complainant to convey to defendant his interest in the premises held in the name of defendant, upon the payment to him by defendant of $2,395, and in the event that defendant should not pay said sum in cash, she is required to convey to complainant the house and lot in Decatur and to pay him the sum of $395 in cash. From this decree defendant appealed.

The bill is for an accounting, pure and simple, and not to declare a resulting trust in defendant in favor of complainant, as to the house and lot in Decatur, and the defendant filed no cross-bill to declare a resulting trust in her favor as to the Blue Mound or Argenta farms, as might be inferred from the authorities cited and arguments advanced by counsel for the respective parties. It cannot be successfully controverted that the Blue Mound farm, purchased in 1879, was purchased with the separate property of defendant. There came into complainant's possession, the separate property of defendant, the sum of $1,925 in cash, and two horses which he subsequently sold, amounting in all to more than $2,000, which was the amount of the cash payment on the farm, the existing mortgage of $600 being assumed by complainant. The deed to this farm was taken in the name of complainant. He testifies that there was no controversy between himself and defendant with reference to whom the deed should be made, while defendant testifies that she desired the deed to be made to her and that complainant objected and insisted that if the title was taken in her name he would have nothing to do with it. The mortgage of $600 on the farm at the time of its purchase, was shortly thereafter paid by complainant with money realized from the operation of the farm and another mortgage was subsequently executed by

complainant and defendant to secure a loan for the same amount and the money realized on such loan was, so far as the record shows, used by complainant for his own purposes. In 1885 complainant sold the Blue Mound farm for $3,600, realizing $3,000 in cash, which he invested in a farm of 160 acres near Argenta. The Argenta farm was the home farm of complainant's father, consisting of 440 acres, in which complainant had an undivided one-fifth interest by inheritance, subject to incumbrances. By conveyances from his brothers and sister, complainant acquired title to 160 acres, his interest in the entire property being estimated at $3,000 upon the basis of a valuation of $50 per acre. As to the purchase of this farm near Argenta, complainant testified as follows: "At the time I purchased the farm near Argenta my wife and I talked about it before I bought it. She wanted me to invest the money from the Blue Mound farm in another farm, and I said I would invest it in the home place, and we bought out the heirs. When I sold the farm I had a talk with my wife about her interest in the land or money and she was willing to go in with me and have it invested in land. She knew I was going to invest it in the Argenta farm and she did not object. I did not pay my wife any interest at that time, nor give her any note. I took her money and invested it in that farm at Argenta, the same as I had invested it in the other farm at Blue Mound." Upon this Argenta farm there was placed by complainant a mortgage incumbrance of $3,500 in the liquidation of prior incumbrances, and some other debts contracted by complainant, and that amount remained an incumbrance on said farm until its sale by complainant in 1900.

The house and lot in Decatur was purchased by complainant in 1888, the title being taken in the name of defendant. With reference to this transaction complainant testified: "I bought this house in Decatur in 1888, and had the deed made in my wife's name by reason of the fact that I owed her this money, $2,100. I paid $1,500 for it and made improvements on it that cost $500." As to the

same transaction, the defendant testified as follows: "Before this property was purchased my husband and I had some conversation in relation to the purchase of the homestead in Decatur. There was not very much said about the property being put in my name. I told him that he had all the land, that I wanted something. The reason I wanted the land put in my name was that it seemed I ought to have something in my name. He had all the money, besides, in his name."

It is insisted by appellant that the amount paid by appellee for the house and lot in Decatur, together with the amount expended by him in improving the same, aggregating $2,000, must be held to have been a gift of advancement to appellant and not a repayment to her, in part at least, of her separate property invested by him. When a husband purchases property with his own funds and the title is taken in the name of his wife, a legal presumption, not conclusive, however, attaches that it was intended as an advancement to the wife. Dorman v. Dorman, 187 Ill. 154. While in this case complainant gave to his wife no note or other obligation in writing, determining his liability to her as her debtor, the evidence impels us to the conclusion that he used her separate property for investment, with the intention of accounting to her therefor, and that the defendant permitted and acquiesced in such use and investments by her husband under the belief and with the expectation that an accounting would be had and that she would be repaid, either in money or property. We are concerned in this case with the rights and obligations of the husband and wife with relation to each other only, and not as affecting third parties. We think the evidence supports the conclusion of the chancellor that the house and lot in Decatur was deeded to defendant with the intention on the part of complainant that it should apply as a repayment, in part, of his assumed obligation to her and that she must be held to have so accepted it.

The Argenta farm was sold by complainant in August, 1900, for $11,520, $3,500 of which was applied in liquida-

tion of a mortgage incumbrance and the balance of $8,020 was realized in cash. At the time negotiations for the sale of this farm were pending, defendant objected to its sale for less than $75 per acre, but finally consented to a sale at $72 per acre on condition that $5,000 of the purchase money should be paid to her. Defendant insists, and so testifies, that the $5,000 was paid to her unconditionally, as her separate property and in settlement of complainant's obligation to her. In this defendant is corroborated by her son, Lewis, who claims to have heard a conversation between complainant and defendant, with regard to the sale of the property. The complainant testifies that defendant in the first instance, demanded that $4,000 of the proceeds of the sale should be paid to her and that he consented with the understanding and agreement that she should hold the money for investment in other farm lands; that later, and immediately before the execution of the deed by her, defendant raised her demand to $5,000 and that he acquiesced upon the same consideration. It is evident from an examination of the record, that for some years preceding, the domestic relations of the parties had been strained and far from harmonious; that each was suspicious of the other and disposed to obtain an advantage, if possible. Defendant manifestly had little confidence in complainant's business ability or his integrity of purpose in dealing with her. In view of their relations, it is not probable that they exercised the utmost good faith toward each other in the transaction in question. Defendant had a motive in securing to herself as much of the proceeds of the sale as possible and to accomplish that end we have no doubt led complainant to believe that she would hold the money for investment in other farm lands. Complainant was not obliged to sell the farm and it does not seem to us probable that he would have insisted upon a sale with the understanding that $5,000 of the $8,020 realized, should be paid to her as her separate property independent of any control by him. Complainant's conduct, with the knowledge of defendant, subsequent to the sale, in looking for other

farms in which to invest the proceeds of the sale, supports our conclusion that the $5,000 was paid to defendant primarily for that purpose.

The decree is not assailed on grounds other than those herein disposed of, and will be affirmed.

*Affirmed.*